# IN THE SUPREME COURT OF CALIFORNIA

LEO BRIAN AVITIA,

Petitioner,

v.

THE SUPERIOR COURT OF SAN JOAQUIN COUNTY,

Respondent;

THE PEOPLE,

Real Party in Interest.

S242030

Third Appellate District
C082859

San Joaquin County Superior Court
STKCRFE2016881, GJ20164112415

December 24, 2018

Justice Liu authored the opinion of the court, in which
Chief Justice Cantil-Sakauye and Justices Corrigan, Cuéllar,
Kruger and Rubin[*] concurred.
Justice Chin filed a concurring opinion in which Chief Justice
Cantil-Sakauye concurred.

---

[*]    Presiding Justice of the Court of Appeal, Second Appellate
District, Division Five, assigned by the Chief Justice pursuant
to article VI, section 6 of the California Constitution.

AVITIA v. SUPERIOR COURT

S242030

Opinion of the Court by Liu, J.

After a prosecutor questioned and dismissed a grand juror outside the presence of other jurors and the trial court, the resulting grand jury returned an indictment against defendant Leo Brian Avitia. Before trial, Avitia moved to set aside the indictment under Penal Code section 995 on the ground that the prosecutor's dismissal violated his constitutional and statutory rights to an impartial and independent grand jury. (All undesignated statutory references are to the Penal Code.) The trial court denied the motion, and the Court of Appeal found no error. We consider whether an indictment must be set aside because of a prosecutor's dismissal of a juror during grand jury proceedings.

We hold that a prosecutor's dismissal of a grand juror violates section 939.5; only the grand jury foreperson may dismiss a grand juror. We further hold that a defendant may seek dismissal of an indictment on the ground that the prosecutor violated section 939.5 by filing a pretrial motion under section 995, subdivision (a)(1)(A). In order to prevail on such a motion, the defendant must show that the error reasonably might have had an adverse effect on the impartiality or independence of the grand jury.

In this case, a grand juror explicitly acknowledged that he could not fairly evaluate the case, and the prosecutor dismissed that juror outside the presence of other jurors. Because Avitia

has not shown that the error reasonably might have had an adverse effect on the impartiality or independence of the grand jury, the motion here fails.

## I.

Avitia was allegedly driving under the influence of alcohol when he crashed into another driver and killed him. The San Joaquin County District Attorney's Office filed a complaint charging Avitia on six counts: second degree murder (§ 187), gross vehicular manslaughter while intoxicated with gross negligence and prior convictions (§ 191.5, subd. (d)), resisting an executive officer (§ 69), driving under the influence of alcohol or drugs causing injury (Veh. Code, § 23153, subd. (a)), driving with a blood-alcohol content level of 0.08 percent or more causing injury (*id.*, § 23153, subd. (b)), and driving when the privilege has been suspended or revoked (*id.*, § 14601.2, subd. (a)).

The trial court impaneled a grand jury of 19 members. At a grand jury proceeding, the prosecutor said to the jurors, "I'm asking if anybody here, after listening to the charges, or listening to the witnesses, has the state of mind which will prevent him or her from acting impartially and without prejudice to the substantial rights of parties." The prosecutor also asked, "Does anyone have any bias as a result of the charges, or as a result of the witnesses that were read?" Grand Juror No. 6, the foreperson, responded, "Yeah." Grand Juror No. 18 responded, "I've arrested people for 148." The prosecutor then said, "What we're going to do now, everybody is going to get out of the jury room and we're going to talk to Juror Number 6, the jury foreman. So can everybody leave?"

The prosecutor questioned Juror No. 6 outside the presence of the grand jury. Juror No. 6 said to the prosecutor, "I just want to divulge that my religion, we don't believe in drinking at all. I do acknowledge people have their agency to do what they want. But I'm morally opposed to drinking, period. But I realize other people don't feel that way." The prosecutor asked, "You do know that it is not against the law to drink and then drive a car?" Juror No. 6 said yes. The prosecutor then asked, "Do you have a problem finding that there's not probable cause just because you have these religious beliefs?" Juror No. 6 said no. The prosecutor then asked, "So you can follow the law?" Juror No. 6 responded, "Yeah." The prosecutor did not dismiss Juror No. 6.

The prosecutor then questioned Juror No. 18, also outside the presence of the grand jury. Juror No. 18 said to the prosecutor, "I am a peace officer. I work for the Department of Alcohol Beverage Control, and I have arrested subjects for 148 PC." The prosecutor asked, "Aren't you exempt from jury duty?" Juror No. 18 responded, "I'm not. I'm 830.2. We don't follow the exemption." The prosecutor then asked, "The fact that you arrested people for resisting arrest before, do you think that's going to affect your impartiality in this case?" Juror No. 18 said, "Yes." The prosecutor asked, "You do?" Juror No. 18 said, "I do, in addition to the fact that I'm currently conducting an investigation that's very similar to these charges." The prosecutor asked, "So you don't think you can be fair?" Juror No. 18 answered, "No, I don't think so." The prosecutor then concluded, "What I'm going to ask you to do is go down to the basement, let them know that you were excused." Juror No. 18 followed the prosecutor's instruction and did not serve on the grand jury. After three days of proceedings, the grand jury

3

returned an indictment on all six counts as well as an additional count of vehicular manslaughter while intoxicated with ordinary negligence while operating a vehicle (§ 191.5, subd. (b)).

Avitia moved to dismiss the grand jury's indictment by way of a nonstatutory motion to the trial court. The trial court granted permission for Avitia to include the nonstatutory motion as part of a section 995 motion to dismiss the indictment either entirely or at least as to count 6 on resisting an executive officer. But the trial court ultimately denied the motion. In a written ruling, the court concluded that there was no evidence that the dismissal impacted the mindset of the grand jury panel or led it to believe that the prosecutor's judgment ultimately controlled the operation and functions of the grand jury. Furthermore, the court concluded that a violation of section 939.5 does not require a per se finding of a due process violation, and Avitia had not shown actual bias or prejudice. The court refrained from deciding whether Avitia had a due process right to an unbiased grand jury, instead concluding that Avitia had failed to establish that any of the grand jurors were in fact biased. The court similarly concluded that because Avitia had not demonstrated that the error reasonably might have affected the outcome of the grand jury proceedings, Avitia had not shown any denial of a substantial right.

Avitia filed a petition for a writ of mandate seeking relief from the trial court's denial. The Court of Appeal denied the petition in an unpublished opinion. Section 995 provides that an "indictment . . . shall be set aside by the court" either "[w]here it is not found, endorsed, and presented as prescribed in this code" (§ 995, subd. (a)(1)(A) (hereafter section 995(a)(1)(A))) or when "the defendant has been indicted without

reasonable or probable cause" (*id.*, subd. (a)(1)(B) (hereafter section 995(a)(1)(B))). The Court of Appeal rejected Avitia's argument under section 995(a)(1)(A) that the indictment was "not found, endorsed, and presented as prescribed in this code." But the court said Avitia had properly raised a due process challenge to the indictment, whether under section 995(a)(1)(B) or through a nonstatutory motion.

Evaluating this claim, the Court of Appeal observed "two parallel standards: (1) Whether the error substantially impaired the independence and impartiality of the grand jury, or (2) whether the error constituted the denial of a substantial right." The court said "it does not matter which analysis is used because . . . neither standard was met." The court held that Avitia had made no showing that the improper dismissal substantially impaired the independence and impartiality of the grand jury, or that it otherwise reasonably might have impacted the outcome of the proceedings to constitute a denial of a substantial right. The court also held that the dismissal did not constitute structural error and that the grand jury was properly constituted. The court said "the prosecutor's violation of statutory requirements is troubling, [but] the trial court's decision to deny petitioner's motion was not error."

We granted review.

## II.

" 'Under the ancient English system . . . the most valuable function of the grand jury was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will.' [Citation.] [¶] . . . . [¶] The grand jury's 'historic role as a

protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor' [citation] is as well-established in California as it is in the federal system. . . . A grand jury should never forget that it sits as the great inquest between the State and the citizen, to make accusations only upon sufficient evidence of guilt, and to protect the citizen against unfounded accusation, whether from the government, from partisan passion, or private malice.' [Citation.] [¶] The protective role traditionally played by the grand jury is reinforced in California by statute." (*Johnson v. Superior Court* (1975) 15 Cal.3d 248, 253–254 (*Johnson*).)

Several provisions of the Penal Code establish procedures to select and dismiss grand jurors. Regarding initial selection, section 909 provides: "Before accepting a person drawn as a grand juror, the court shall be satisfied that such person is duly qualified to act as such juror. When a person is drawn and found qualified he shall be accepted unless the court, on the application of the juror and before he is sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of the Code of Civil Procedure." Section 910 provides: "No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when made by the court for want of qualification, as prescribed in Section 909."

After selection, the dismissal of a grand juror must also follow certain procedures. Section 935 provides: "The district attorney of the county may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by the grand jury, and may interrogate witnesses before the grand jury whenever he thinks it necessary." But the statute confers no authority on a prosecutor

to dismiss a grand juror. Rather, section 939.5 provides: "Before considering a charge against any person, the foreman of the grand jury shall state to those present the matter to be considered and the person to be charged with an offense in connection therewith. He shall direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire. Any violation of this section by the foreman or any member of the grand jury is punishable by the court as a contempt." These statutes serve to ensure the impartiality and independence of the grand jury.

The parties agree, and we also agree, that a prosecutor's dismissal of a grand juror violates section 939.5. During selection of the grand jury, section 909 authorizes "the court" to "excuse[] [a juror] from such service" for lacking certain qualifications. After selection, section 939.5 authorizes "the foreman of the grand jury" to "direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire." Section 935 authorizes the prosecutor to "give[] information or advice relative to any matter cognizable by the grand jury." But no provision authorizes a prosecutor to dismiss a grand juror, as the prosecutor did here. The prosecutor could have made his concerns about Juror No. 18 known to the foreperson, who in turn could have directed the juror to retire in accordance with section 939.5. But the prosecutor's dismissal of Juror No. 18 exceeded his authority.

## III.

We next consider whether an indictment must be set aside because of a prosecutor's violation of section 939.5. That provision says: "Any violation of this section by the foreman or any member of the grand jury is punishable by the court as a contempt." But the provision does not say what remedy is available for a violation by the prosecutor. Avitia argues that an indictment can nonetheless be set aside under section 995. We agree that a defendant may seek a remedy under section 995(a)(1)(A) when a prosecutor dismisses a grand jury member in violation of section 939.5.

In two early cases, we said that a grand jury foreman's noncompliance with section 907, the precursor to section 939.5, was not grounds for dismissing an indictment under section 995. In *People v. Kempley* (1928) 205 Cal. 441 (*Kempley*), two defendants appealed from their convictions for accepting bribes and moved for a new trial under section 995(a)(1)(A). (*Kempley*, at p. 444.) The defendants offered to prove that several members of the grand jury personally interviewed individuals outside those named in the proceedings, used private funds to employ detectives to obtain evidence, and had already decided to indict without having heard any evidence. (*Id.* at p. 446.) We understood the defendants' claim as a challenge to "the individual members of the grand jury on the ground of bias or prejudice" (*ibid.*), and we observed that section 907 provides the proper recourse to address such defects (*Kempley*, at p. 447). Rejecting the defendants' claim, we said: "The provisions of [section 907] were not complied with; but the neglect or failure of the foreman to comply therewith is not made a ground for setting aside the indictment by section 995 of the Penal Code *and section 907 contains within itself the penalty for the*

*violation of its provisions*," i.e., the foreman's violation is punishable as a contempt. (*Ibid.*, italics added.) In *People v. Jefferson* (1956) 47 Cal.2d 438 (*Jefferson*), we applied *Kempley* to reject another motion to set aside an indictment under section 995(a)(1)(A) where the grand jury foreperson again did not comply with former section 907.

*Kempley* and *Jefferson* are distinguishable because they concerned violations of section 939.5 (former section 907) by the grand fury foreperson and not, as here, by a prosecutor. Section 939.5 specifies a penalty of contempt for violations by the foreperson but provides no comparable mechanism to deter violations by a prosecutor. (*Kempley*, *supra*, 205 Cal. at pp. 447–448.) Nor does such a violation fall within the coverage of section 995(a)(1)(B), which requires setting aside an indictment where the defendant "has been indicted without reasonable or probable cause." (Cf. *Stark v. Superior Court* (2011) 52 Cal.4th 368, 407 (*Stark*) [setting aside an indictment under section 995(a)(1)(B) "when a grand jury is not asked to consider the mental state required for the commission of the offense"]; *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1029 [refusing to set aside an indictment under section 995(a)(1)(B) because a challenged instruction on probable cause was adequate and there was sufficient evidence to find probable cause]; *People v. Backus* (1979) 23 Cal.3d 360, 385–391 [refusing to set aside an indictment under section 995(a)(1)(B) because there was sufficient evidence to find probable cause].) Avitia does not claim that the prosecutor's dismissal of Juror No. 18 resulted in a grand jury that indicted him without reasonable or probable cause.

Section 995(a)(1)(A)'s directive to set aside an indictment "not found, endorsed, and presented as presented in this code"

may provide a remedy in certain cases when procedural rights of the accused have been violated. In the related context of setting aside an information under section 995, we have explained that " '[a]n information . . . will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right*, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion.' " (*Jennings v. Superior Court* (1967) 66 Cal.2d 867, 874.) Because the text of section 939.5 also addresses substantial rights, we see no reason why a similar rule should not apply to ensure the procedural integrity of an indictment when a prosecutor violates this section. (§ 939.5 ["[the foreperson] shall direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and *without prejudice to the substantial rights* of the party to retire"] (italics added).) In this context, section 995(a)(1)(A) allows a defendant to pursue a motion to set aside an indictment where the defendant alleges that a prosecutor's violation of section 939.5 has prejudiced a substantial right.

The Attorney General relies on *Jefferson*'s observation that section 995(a)(1)(A) "has been interpreted as applying only to those sections in part 2, title 5, chapter 1, of the Penal Code beginning with section 940." (*Jefferson, supra,* 47 Cal.2d at p. 442, citing *Kempley, supra,* 205 Cal. at p. 447.) But this dicta was only an observation about how our precedent had interpreted section 995(a)(1)(A) up to that point. Neither *Kempley* nor *Jefferson* contemplated the availability of a section

995(a)(1)(A) remedy when a prosecutor, rather than the grand jury foreperson, was responsible for a section 939.5 violation.

We next address whether a section 939.5 violation by a prosecutor can amount to the violation of a substantial right. Although we have focused our analysis on "substantial rights" in some contexts (*People v. Standish* (2006) 38 Cal.4th 858, 882 (*Standish*)) and "due process" in others (*Stark, supra,* 52 Cal.4th at p. 417), we understand the inquiries to be one and the same in this context: a right is substantial when denial of the right results in a denial of due process. In *Stark*, we said that a prosecutor's conflict of interest — there it was alleged that the district attorney's office was "financially impacted" by the defendant's misconduct and that the prosecutor was "personally involved" in the events under investigation (*id.* at p. 414) — can result in a denial of due process if it is shown that the conflict "substantially impaired the independence and impartiality of the grand jury" (*id.* at p. 417). A prosecutor's violation of section 939.5 likewise can threaten the basic function of the grand jury as " 'a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor.' " (*Johnson, supra,* 15 Cal.3d at p. 253.) A prosecutor's improper dismissal of a grand juror may result in a grand jury that is skewed in its composition. It also risks creating a perception in the jurors' minds that the prosecutor exercises control over the operation and functions of the grand jury, beyond the authority vested in the foreperson and the jurors themselves. Section 939.5's conferral of authority on the foreperson to dismiss a biased juror is an important safeguard to ensure that the grand jury remains impartial and independent of the prosecutor.

Although not every prosecutorial violation of section 939.5 is reason to set aside an indictment, an indictment must be set

aside where the violation results in the denial of a substantial right. (See *Stark, supra,* 52 Cal.4th at p. 417 ["the manner in which the grand jury proceedings are conducted may result in a denial of defendant's due process rights, requiring dismissal of the indictment"]; cf. *Beck v. Washington* (1962) 369 U.S. 541; *Packer v. Superior Court* (2011) 201 Cal.App.4th 152.) We hold that a defendant can proceed by a section 995(a)(1)(A) motion to set aside an indictment on the ground that a section 939.5 violation substantially impaired the impartiality and independence of the grand jury.

## IV.

Next, we consider what standard applies in determining whether a prosecutor's violation of section 939.5 amounts to the denial of a defendant's substantial right to an impartial and independent grand jury. Avitia argues that no showing of prejudice is required because he is seeking dismissal of the indictment *in a pretrial motion.* The Attorney General disagrees. We hold that the defendant, when proceeding by way of a section 995(a)(1)(A) motion, must show that the section 939.5 violation reasonably might have had an adverse effect on the impartiality or independence of the jury.

"[S]ome errors such as denial of the right to counsel by their nature constitute a denial of a substantial right." (*Standish, supra,* 38 Cal.4th at p. 882; see, e.g., *People v. Gamache* (2010) 48 Cal. 4th 347, 396 ["[S]tructural errors not susceptible to harmless error analysis are those that go to the very construction of the trial mechanism — a biased judge, total absence of counsel, the failure of a jury to reach any verdict on an essential element."]; *Vasquez v. Hillery* (1986) 474 U.S. 254, 263–264 ["[D]iscrimination in the grand jury undermines the

structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review."].) In certain instances, we have set aside informations because of procedural defects without conducting a prejudice analysis. (See *People v. Elliot* (1960) 54 Cal.2d 498, 504 (*Elliot*) [defendant was denied the right under "section 868 of the Penal Code, to require that all unauthorized persons be excluded from the courtroom during the preliminary examination"]; *People v. Napthaly* (1895) 105 Cal. 641, 644–645 [defendant was denied the right to counsel]; see also *Harris v. Superior Court* (2014) 225 Cal.App.4th 1129, 1144 [defendant was denied effective assistance of counsel because counsel "had a material conflict of interest with him at the time of his preliminary hearing"].)

More recently, we have explained that "whether a showing of prejudice is required depends on the stage of the proceedings at which the claim is raised in the reviewing court." (*People v. Booker* (2011) 51 Cal.4th 141, 157.) In *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 (*Pompa-Ortiz*), we considered a defendant's request, on appeal from a judgment of conviction, to set aside an information under section 995 because his preliminary examination had been closed to the public. (*Pompa-Ortiz*, at p. 522.) We said "[i]t is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion." (*Id.* at p. 523.) Applying this interpretation of section 995, we held that a defendant "has a statutory right to a public preliminary examination and that denial of the right renders the commitment unlawful within the meaning of Penal Code section 995[(a)(2)(A)]." (*Id.* at p. 522.) But we also held that "such illegality can be successfully urged as a ground of reversal on appeal only if it in some way

prejudiced defendant at his subsequent trial." (*Ibid.*, citing Cal. Const., art. VI, § 13.) Because the defendant made "no showing that he was denied a fair trial or otherwise suffered prejudice from the closure of the preliminary examination," we affirmed the judgment of conviction. (*Id.* at p. 530.) In reaching this conclusion, we held that "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Id.* at p. 529.) We added, "The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities." (*Ibid.*) We have since said "[t]he reasoning of *Pompa-Ortiz* applies with equal force in the grand jury context." (*People v. Towler* (1982) 31 Cal.3d 105, 123.)

*Pompa-Ortiz* involved a posttrial motion and did not provide an occasion for application of its language concerning "pretrial challenges of irregularities." (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 529.) We clarified in *Standish*, which involved a pretrial motion to set aside an information, that *Pompa-Ortiz* did not mean that "*any and all* irregularities that precede or bear some relationship to the preliminary examination require that the information be set aside pursuant to section 995." (*Standish*, *supra*, 38 Cal.4th at p. 885.) We recognized that certain errors, even if challenged before trial, will be considered a denial of a substantial right "only if the error 'reasonably might have affected the outcome.'" (*Id.* at p. 882, quoting *People v. Konow* (2004) 32 Cal.4th 995, 1024–1025.) We distinguished two pretrial cases where we presumed prejudice in light of

14

statutory violations because "they were based in large part on the circumstance that the relevant statute required dismissal as the proper remedy when, without a showing of good cause, the defendant had not been brought to trial within the statutory period." (*Id.*, at p. 886, citing *Serna v. Superior Court* (1985) 40 Cal.3d 239, 263 ["Prejudice is presumed when relief is sought on section 1382 grounds pretrial because the statute commands that the court 'must order the action to be dismissed.' "]; *People v. Wilson* (1963) 60 Cal.2d 139, 151 ["[S]ection 1382, subdivision 2, is mandatory . . . ; hence—there being no sufficient showing of good cause for delay in the case at bench—defendant then had the right to have the action dismissed on his motion."].) The violation of other statutes that "do[] not implicate a core right *at the preliminary examination itself*" or "call[] for dismissal" are "subject to the general test for prejudice because . . . the error is not inherently prejudicial." (*Standish*, *supra*, 38 Cal.4th at p. 883.)

In light of this case law, we hold that outside a narrow category of errors that "by their nature constitute a denial of a substantial right" and hence require dismissal "without any showing of prejudice," a defendant seeking to set aside an indictment before trial must show that an error "reasonably might have affected the outcome." (*Standish*, *supra*, 38 Cal.4th at pp. 882, 886.) This showing is less onerous than the "reasonably probable" showing required to prevail on a similar motion after trial, when interests in finality are greater. (See *id.*, at pp. 882–883 ["By this language, we do not mean that the defendant must demonstrate that it is reasonably *probable* he or she would not have been held to answer in the absence of the error. Rather, the defendant's substantial rights are violated when the error is not minor but 'reasonably *might* have affected

the outcome' in the particular case."].) We agree with the Court of Appeal in this case that a section 939.5 violation is "not inherently prejudicial." When a defendant seeks to set aside an indictment before trial under section 995(a)(1)(A) on the ground that the prosecutor violated section 939.5, the indictment must be set aside only when the defendant has shown that the violation reasonably might have had an adverse effect on the independence or impartiality of the grand jury.

## V.

We now apply this inquiry to the facts of this case. As noted, the prosecutor's dismissal of Juror No. 18 was unlawful under section 939.5. But Juror No. 18 had said he thought he would be biased in evaluating the case, and the prosecutor appeared to dismiss the juror on that basis. We cannot be certain what the foreperson would have done if not for the prosecutor's actions or how the grand jury would have otherwise proceeded. But in light of Juror No. 18's unequivocal statement that he would not be able to fairly review the case, there is a high probability that the foreperson ultimately would have removed the juror. In any event, the dismissal of Juror No. 18 helped to ensure the grand jury's impartiality by removing a potential juror who said he could not be impartial.

As for the independence of the grand jury, the prosecutor unquestionably influenced the composition of the grand jury by removing Juror No. 18. But mere influence over the composition of the grand jury is not impermissible; section 935 provides that the prosecutor may "giv[e] information or advice relative to any matter cognizable by the grand jury." The facts here are different from cases where the prosecutor was actively involved in the selection of grand jurors or excused a grand juror in the

presence of other grand jurors.  In those cases, the prosecutor's actions could have led grand jurors to believe they were beholden to the prosecutor during the decisionmaking process. (See *De Leon v. Hartley* (N.M. 2014) 316 P.3d 896, 901 (*De Leon*) [setting aside an indictment where the district court permitted the prosecutor to select the grand jury without the court's involvement]; *Williams v. Superior Court* (2017) 15 Cal.App.5th 1049, 1061 [setting aside an indictment where "[t]he prosecutor's actions supplanted the court's role in the proceedings and, because the excusal colloquy took place in front of the other jurors, allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request"].)

In this case, nothing in the record suggests that the prosecutor was improperly involved in the selection of the grand jurors or in the grand jury's subsequent decisionmaking process. Instead, the record indicates that the prosecutor dismissed Juror No. 18 outside the presence of other grand jurors after the grand jury heard Juror No. 18 express concern about his own bias.  The fact that the prosecutor dismissed Juror No. 18 outside the presence of the other grand jurors does not make the dismissal any less unlawful.  But it reduced the likelihood that the independence of the remaining grand jury was impaired. The other members had no reason to think that the prosecutor, as opposed to the foreperson, dismissed Juror No. 18.  On the record before us, the foreperson was the only grand juror who could have known that he was not the one who removed Juror No. 18, and even the foreperson did not necessarily know it was the prosecutor who had done so.  Avitia therefore has not shown that the error reasonably might have affected the impartiality or independence of the grand jury in an adverse manner.

*Dustin v. Superior Court* (2002) 99 Cal.App.4th 1311 is distinguishable. The court there held "it was error for the trial court to have placed the burden on defendant to show prejudice as a result of the denial of his right to a transcript of the entire grand jury proceedings." (*Id.* at p. 1326.) But the court did so where "[i]n the absence of a transcript, coupled with the fact that no judge or defense representative was present, it is difficult to imagine how a defendant could ever show prejudice." (*Ibid.*) Further, the court said the prosecutor apparently excluded a court reporter "for the express purpose of precluding discovery by the defendant of his opening statement and closing argument" and that "the prosecutor's behavior is relevant in addressing whether dismissal is an appropriate remedy for the failure to provide a complete transcript of the grand jury proceedings." (*Id.* at pp. 1323–1324.) No similar circumstance is present here.

Although we conclude that Avitia's motion fails on the facts before us, we emphasize that prosecutors must be mindful of the dictates of section 939.5 and conform their conduct accordingly. We agree with the New Mexico high court's admonition that the "entity charged with the actual selection and excusal of grand jurors is of paramount importance to the process. As such, the statutory provisions assigning that role . . . should be seen as mandatory, not directory, because they are critical to ensuring that the process of impaneling a grand jury is impartial and free of unfair influences. [Citations.] [¶] . . . . [¶] The manner in which grand jurors are selected and excused goes to the very heart of how the public views the integrity of the grand jury system. [¶] . . . . [¶] And if the integrity of the grand jury is called into question, there is little hope that the public at large, or the accused in particular, will view the grand

jury as capable of returning well-founded indictments or serving as a realistic barrier to an overzealous prosecution." (*De Leon, supra,* 316 P.3d at pp. 900–901.) Section 939.5 makes clear that the foreperson, not the prosecutor, has authority to dismiss grand jurors. The prosecutor, who " ' "is in a peculiar and very definite sense the servant of the law" ' " (*People v. Eubanks* (1996) 14 Cal.4th 580, 589), is expected to know the law and to follow it.

## CONCLUSION

We affirm the judgment of the Court of Appeal and vacate the stay we previously imposed.

**LIU, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**RUBIN, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

AVITIA v. SUPERIOR COURT

S242030

Concurring Opinion by Justice Chin

I agree that Penal Code section 995, subdivision (a)(1)(A), permits a motion to dismiss the grand jury indictment on the ground that the prosecutor violated Penal Code section 939.5. I also agree that the superior court correctly denied the motion in this case. But the prosecutor's action in dismissing the grand juror is not as pernicious as the majority opinion makes it appear.

Although the majority barely acknowledges it, the prosecutor excused a grand juror who was biased *against* defendant, Leo Brian Avitia. Excusing a grand juror who was biased against a defendant does not violate that defendant's substantial rights. Nor does it call into question " 'the integrity of the grand jury.' " (Maj. opn., *ante*, at p. 18.)

As a result, I do not read today's opinion as answering the question that both the high court and our state courts have previously avoided answering — whether defendants have a due process right to enforce procedures that ensure the impartiality of a grand jury under pain of dismissal. (*Beck v. Washington* (1962) 369 U.S. 541, 546; *Jackson v. Superior Court* (2018) 25 Cal.App.5th 515, 530, review granted Sept. 19, 2018, S250995; *Packer v. Superior Court* (2011) 201 Cal.App.4th 152, 168-169.) Like those cases, and to an even greater extent here, it is sufficient to state that defendant failed to show he was judged by a biased grand juror.

1

This is an odd case.  Decades ago, we noted with approval that the Court of Appeal in the case had "held that the *obligation* of the prosecutor to assure independence, procedural regularity, and *fairness* in grand jury proceedings is compelled by due process . . . ." (*People v. Backus* (1979) 23 Cal.3d 360, 392, italics added.)  The prosecutor might have had that admonition in mind when excusing a grand juror who was biased against defendant.

A credible argument exists that the prosecutor has *inherent* authority under *People v. Backus*, *supra*, 23 Cal.3d 392, to excuse a grand juror who is biased against the defendant.  Arguably, doing so would be necessary to ensure fairness.  To say that the prosecutor is obligated to ensure fairness implies that the prosecutor also has the *authority* to do so.  The law cannot obligate a prosecutor to do something and simultaneously prohibit the prosecutor from doing that same something.  If the biased juror had *not* been excused, defendant might now be contending, with more credibility than his actual contention, that his substantial right to an unbiased grand jury was violated.

But no party is arguing that, as part of his obligation to ensure fairness, the prosecutor had inherent authority to excuse the biased juror.  Accordingly, I accept that the prosecutor erred; only the foreperson may excuse a grand juror.  But it was a technical error.  Rather than excuse the juror himself, the prosecution could have advised the foreperson to excuse the juror.  Certainly, the prosecutor had the authority to do that.  "The district attorney of the county may *at all times* appear before the grand jury for the purpose of giving information *or advice* relative to *any matter* cognizable by the grand jury . . . ." (Pen. Code, § 935, italics added.)  In turn, the foreperson

probably would have excused the juror, and perhaps would have been required to do so to ensure fairness.

The difference between excusing the biased juror directly and advising the foreperson to do so could not have affected any substantial right of the defendant. Either way, a juror biased against him would have been removed.

I do not suggest that an indictment can never be set aside because of a Penal Code section 939.5 violation. In some situations, such a violation could infringe a defendant's substantial right — for example, if the prosecutor manipulated excusals and selections to keep as grand jurors only those perceived to be favorable to the prosecution, and to remove those perceived to be favorable to the defendant. But this case is not remotely similar.

**CHIN, J.**

**I Concur:**

**CANTIL-SAKAUYE, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Avitia v. Superior Court

_____

**Unpublished Opinion** NP opn. filed 4/18/17 – 3d Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S242030
**Date Filed:** December 24, 2018

_____

**Court:** Superior
**County:** San Joaquin
**Judge:** Brett H. Morgan and Seth Hoyt

_____

**Counsel:**

David J. Cohen and Alexander P. Guilmartin for Petitioner.

No appearance for Respondent.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Rachelle A. Newcomb and Catherine Chatman, Deputy Attorneys General, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David J. Cohen
300 Montgomery Street, Suite 660
San Francisco, CA 94104
(415) 398-3900

Catherine Chatman
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 210-7699